**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**JOSHUA L. PATE,**

      **Petitioner,**

**v.**                          **Case No.  4:17cv562-WS/CAS**

**JULIE L. JONES, Secretary,
Department of Corrections,**

      **Respondent.**
_____/

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On December 7, 2017, Petitioner, Joshua L. Pate, a prisoner in the custody of the Florida Department of Corrections, proceeding pro se under the mailbox rule, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  ECF No. 1.  On October 15, 2018, Respondent filed an answer and the record.  ECF No. 19.  Petitioner filed a reply on December 17, 2018.  ECF No. 24.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B).  After careful consideration of all the issues raised, the undersigned has determined that no evidentiary hearing is required for disposition of this case.  *See* Rule 8(a), R. Gov.

§ 2254 Cases in U.S. Dist. Cts.  For the reasons set forth herein, the pleadings and attachments before the Court show that Petitioner is not entitled to federal habeas relief and this § 2254 petition should be denied.

## Background and Procedural History

On May 8, 2012, Petitioner was charged by Amended Information filed in the Circuit Court of Leon County, Florida, with Count 1, Aggravated Battery (great bodily harm); Count 2, Felony Battery by Strangulation; Count 3, Fleeing or Attempting to Elude Officer; and Count 4, Resisting an Officer without Violence.  Ex. B1 at 12.[1]  Jury trial was held on January 7-10, 2013, and Petitioner was found guilty as charged on Counts 1 and 3, and guilty of the lesser offense of simple battery on Count 2.  Ex. B1 at 48-50, 99.  A judgment of acquittal was granted as to Count 4.  Ex. B4 at 200.

On February 25, 2013, Petitioner was sentenced to fifteen years in prison as a Prison Releasee Reoffender for Count 1, with credit for 425 days served, and to 34.575 months on Count 3 to run concurrently with the sentence for Count 1, with 425 days credit.  Ex. B1 at 54-64, 114-15. Petitioner was not adjudicated or sentenced for Count 2 due to double jeopardy concerns.  Ex. B1 at 114-15.

---

[1] Hereinafter, citations to the state court record, "Ex. –," refer to exhibits A through E submitted in conjunction with Respondent's answer.  *See* ECF No. 19.

Petitioner appealed to the state First District Court of Appeal and his counsel filed an <u>Anders</u> brief.[2]  Petitioner was given leave to file his own brief, Ex. B10A, but the record does not indicate any pro se brief was filed.  The First District Court of Appeal affirmed without written opinion on December 6, 2013.  Ex. B11.  The mandate was issued on January 2, 2014.  Ex. B12.  *See* <u>Pate v. State</u>, 128 So. 3d 802 (Fla. 1st DCA 2013) (table).

On September 2, 2014, Petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 alleging two claims of ineffective assistance of counsel.[3]  Ex. C1 at 3-13.  The motion was summarily denied on March 6, 2017.  Ex. C1 at 28-94.  Motion for reconsideration was denied on March 30, 2017.  *Id.* at 95-102.  Petitioner appealed denial of post-conviction relief and the appellate court affirmed per curiam without written opinion on July 12, 2017.  Ex. C4.  The mandate

---

[2] <u>Anders v. California</u>, 386 U.S. 738, 744 (1967) (holding that when appointed counsel finds the appeal to be frivolous, counsel should so advise the court after a conscientious examination of the record and reference to anything in the record that might support an appeal, and counsel may request permission to withdraw).

[3] The claims raised in Petitioner's Rule 3.850 motion were: (1) ineffective assistance of trial counsel (IAC) for failing to investigate surveillance video from three establishments that could impeach the victim's testimony; and (2) IAC for failing to seek a curative instruction and mistrial following improper comments by the prosecutor on Petitioner's right to remain silent.  Ex. C 1 at 3-13.

was issued on August 9, 2017.  Ex. C5.  *See* <u>Pate v. State</u>, 228 So. 3d 558

(Fla. 1st DCA 2017) (table).

On December 7, 2017, Petitioner filed his petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254 in this Court raising the following

grounds for relief:

> (1) Trial counsel rendered ineffective assistance for failing to investigate video evidence that would have proven an alibi defense; and

> (2) Trial counsel rendered ineffective assistance for failing to seek a mistrial based on improper comments by the prosecutor.

## <u>Analysis</u>

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant

habeas corpus relief for persons in state custody only under certain

specified circumstances.  Section 2254(d) provides in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of

> the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d).  *See also* <u>Cullen v. Pinholster</u>, 563 U.S. 170, 181

(2011); <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1287 (11th Cir. 2011).

"Under the 'contrary to' clause, a federal habeas court may grant the

writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently

than this Court has on a set of materially indistinguishable facts." <u>Williams</u>

<u>v. Taylor</u>, 529 U.S. 362, 412-13 (2000) (O'Connor, J., concurring).  "Under

the 'unreasonable application' clause, a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from this

Court's decisions but unreasonably applies that principle to the facts of the

prisoner's case."  *Id.* at 413 (O'Connor, J., concurring).

The Supreme Court has explained that "even a strong case for relief

does not mean the state court's contrary conclusion was unreasonable."

<u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011).  The Court stated:

> As amended by AEDPA, § 2254(d) stops short of imposing a
> complete bar on federal-court relitigation of claims already
> rejected in state proceedings. . . .  It preserves authority to
> issue the writ in cases where there is no possibility fairminded
> jurists could disagree that the state court's decision conflicts
> with this Court's precedents.  It goes no further.  Section
> 2254(d) reflects the view that habeas corpus is a "guard against
> extreme malfunctions in the state criminal justice systems," not
> a substitute for ordinary error correction through appeal.

> Jackson v. Virginia, 443 U.S. 307, 332, n.5 (1979) (Stevens, J.,
> concurring in judgment).  As a condition for obtaining habeas
> corpus from a federal court, a state prisoner must show that the
> state court's ruling on the claim being presented in federal court
> was so lacking in justification that there was an error well
> understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Id.* at 102-03 (citation omitted).  The federal court employs a " 'highly

deferential standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt.' " Pinholster, 563

U.S. at 181 (quoting Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

 "Before a federal court may grant habeas relief to a state prisoner,

the prisoner must exhaust his remedies in state court." O'Sullivan v.

Boerckel, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b).  Petitioner must

"fairly present" his claim in each appropriate state court in order to alert the

state courts to the federal nature of the claim.  Duncan v. Henry, 513 U.S.

364, 365 (1995); Picard v. Connor, 404 U.S. 270, 275 (1971); O'Sullivan,

526 U.S. at 845.  In regard to claims of ineffectiveness of trial counsel, the

Petitioner must have presented those claims in state court " 'such that a

reasonable reader would understand each claim's particular legal basis and

factual foundation.' " Ogle v. Johnson, 488 F.3d 1364, 1368 (11th Cir.

2007) (citing McNair v. Campbell, 416 F.3d 1291, 1302 (11th Cir. 2005)).

This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Pinholster, 563 U.S. at 181. The state court's factual findings are entitled to a presumption of correctness and to rebut that presumption, the Petitioner must show by clear and convincing evidence that the state court determinations are not fairly supported by the record. *See* 28 U.S.C. § 2254(e)(1). However, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions" and "[i]n conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). *See also* Swarthout v. Cooke, 562 U.S. 216, 222 (2011) ("[W]e have long recognized that 'a "mere error of state law" is not a denial of due process.' " (quoting Engle v. Isaac, 456 U.S. 107, 121, n.21 (1982))).

Further, under § 2254(d), federal courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." Marshall v. Lonberger, 459 U.S. 422, 434 (1983). "Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." Consalvo v. Sec'y, Dep't of Corr., 664 F.3d 842, 845 (11th Cir.

2011).  Credibility and demeanor of a witness are considered to be

questions of fact entitled to a presumption of correctness under the AEDPA

and the Petitioner has the burden to overcome the presumption by clear

and convincing evidence.  *Id.* at 845.

 For claims of ineffective assistance of counsel, the United States

Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

deficient performance, a "defendant must show that counsel's performance

fell below an objective standard of reasonableness."  *Id.* at 688.  Counsel is

"strongly presumed to have rendered adequate assistance and made all

significant decisions in the exercise of reasonable professional judgment."

Burt v. Titlow, 134 S. Ct. 10, 17 (2013) (quoting Strickland, 466 U.S. at

690).  Federal courts are to afford "both the state court and the defense

attorney the benefit of the doubt."  *Id.* at 13.  The reasonableness of

counsel's conduct must be viewed as of the time of counsel's conduct.  *See*

Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015) (citing Strickland, 466 U.S. at 690).

To demonstrate prejudice under Strickland, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* For this Court's purposes, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schriro v. Landrigan, 550 U.S. 465, 473 (2007)). "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." Mirzayance, 556 U.S. at 123. It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard." *Id.* Both deficiency and prejudice must be shown to demonstrate a violation of the Sixth Amendment. Thus, the court need not address both prongs if the petitioner fails to prove one of the prongs. Strickland, 466 U.S. at 697.

## Ground 1: Video Evidence

In his first ground, Petitioner contends that trial counsel rendered ineffective assistance for failing to investigate surveillance video evidence that would have proven an alibi defense.  ECF No. 1 at 5.  Petitioner was convicted in pertinent part of aggravated battery with great bodily harm.  The victim, D.T., testified at trial that she had been dating Petitioner for about three weeks prior to the date of the offenses.  Ex. B3 at 67-68, 91-92.  They had broken up and, on December 20, 2011, were talking about getting back together.  Petitioner drove them in his mother's white car to Zingales bar where they had seven or eight beers and then left to pick up more beer at a convenience store called Zewditu.  They planned to go to Petitioner's house for the evening.  *Id.* at 68-69, 78, 93, 97.  D.T. testified that while at the convenience store, Petitioner got angry with her for flirting with someone and drove off crazily.  *Id.* at 70.  She said when he stopped the car, she ran away, leaving her purse and shoes in the car.  She testified that Petitioner chased her down and threw her to the ground, slamming her head on the pavement.  She got away and ran but fell, and he started choking her and punching her in the face.  She said she bit his arm that was pressing on her throat and he bit her on the face several times in return, causing her to bleed.  When she got away again and ran for help, a

motorist stopped to help her.  Ex. B3 at 71-72, 105-07.  The motorist, Tyler Bedashi, testified that he saw D.T., bloody and beaten, waving him down and saw a young white male who was trying to hold her back from coming out into the road.  *Id.* at 122.

Officer Brandon McGill testified that he saw Bedashi's car with two occupants who were trying to flag him down.  Before he spoke with them, a white sedan ran a red light and nearly collided with the police car.  Officer McGill turned on his lights in preparation to stop the car, but it fled eastbound quickly.  *Id.* at 127-136.  Shortly thereafter, a white sedan was seen crashed nearby but sped away.  *Id.* at 135-36.  Officer Michael Schwab responded to the crash and observed a white sedan with two flat front tires driving at him at a high rate of speed.  *Id.* at 145-147.  Officer Schwab then found the vehicle up against a curb with the driver's side door open and no one inside.  A fairly short white male with a thin build and short, light brown hair was seen running away, and was not apprehended at that time.  *Id.*  The description matched Petitioner when he was arrested nine days later, as he was reported to be 28-years-old, 5' 6" tall, 135 pounds with brown hair.  Ex. B1 at 16.  D.T. and Officer Schwab identified photos of the crashed car as looking like the one Petitioner drove on the night of the offenses.  Ex. B3 at 82-83, 148.  Petitioner's cell phone was in

the crashed car and the car was found to belong to his mother.  Ex. B4 at

164-171, 177-79, 185.

Petitioner testified at trial that he did drive his mother's car to Zingales

with D.T. that night but he did not crash it or beat up D.T.  He said when he

and D.T. left Zingales, they were in the parking lot smoking when he got

into an argument with three guys who had been sitting near them in the bar

earlier.  Ex. B4 at 221.  He testified that they fought and he was knocked

out.  He said he woke up sometime later on the grass where the car had

been parked.  He testified that the car, the three guys, and D.T. were gone.

*Id.* at 222-26.  He told the jury that he walked to a CVS to buy cigarettes

and then headed toward his mother's house, but sat down on a bench and

passed out.  He said he got to his mother's house about 6 a.m., where he

lay down in bed and fell asleep for several hours.  *Id.* at 228-29.

In his pro se post-conviction claim filed in state court, Petitioner

contended that trial counsel was ineffective for failing to obtain surveillance

videos from Zingales, the convenience store, and the CVS.  He alleged:

> During his initial interview, Mr. Pate very specifically
> informed counsel of the security cameras in Zingales and CVS
> and the probability of security video from the convenience store
> and what the content from each would show.  The substance of
> the video from Zingales would show that Mr. Pate and [D.T.]
> were in fact there for nearly five hours, were in fact mingling
> with other patrons and employees known by [D.T.], and the
> amount and type of alcohol consumed during the evening.  The

substance of the video from the convenience store could have shown whether [D.T.] was, in fact, at the store and if so, with whom -- and definitively show Mr. Pate was not there at any time.  The substance of the video from CVS would show Mr. pate was at the store at or near the time [D.T.] was assaulted several miles away.  At no time after the initial interview did counsel inform Mr. Pate of any investigation into the security videos from these establishments.

These videos, individually and collectively, are [c]onstitutionally material exculpatory evidence that could have been used to impeach [D.T.].  The videos could have been obtained with due diligence, and counsel could not, and did not, obtain evidence comparable to the videos in the form of eyewitness testimony or other evidence to support Mr. Pate's version of events.

Ex. C1 at 6.  The state court entered an order to show cause to the State to

file a response.  *Id.* at 14.  After the State responded, the post-conviction

court entered an order summarily denying relief, concluding that counsel

was not deficient for failing to investigate security video for the three

locations.  Ex. C1 at 29-30.  The court stated:

The video surveillance tapes from Zingales, CVS, and convenience store would not have been relevant to what occurred when the parties left the area, but rather would have shown that Defendant and [D.T.] spent several hours drinking and conversing with other patrons at Zingales.  The tapes would not have depicted what happened at the time of the attack on [D.T.].  Additionally, the tapes would not have established that [D.T.] was not where she said she was because Mr. Bedashi's testimony corroborates [D.T's] account of the roadside events.  Therefore, there was no reason for counsel to investigate the video surveillance tapes and Defendant has not shown deficient performance.  Ground I is denied.

Ex. C1 at 30.  The state appellate court affirmed.

Even if counsel were deficient in failing to investigate the content of any security video from the three locations, Petitioner failed to allege facts demonstrating prejudice, the second prong of Strickland which must also be established to prove ineffective assistance of counsel.  Nowhere in his state court pleading did Petitioner allege facts showing that the videos existed, that they included scenes relevant to the issues in the case, and that they would have rebutted D.T.'s testimony that Petitioner was the person who attacked her or rebutted the other evidence that corroborated her testimony that Petitioner was driving the car and fled the scene after the attack.  Petitioner alleged no facts to support a reasonable probability—sufficient to undermine confidence in the outcome—that but for the alleged error of counsel, the result of the proceeding would be different and Petitioner would have been acquitted.  *See* Strickland, 466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable."  Richter, 562 U.S. at 112.  Instead, Petitioner's allegations were conclusory in nature and speculative.  He contended that there was a "probability" that the convenience store had video.  He only speculated that the CVS had a video and that it would show he was there when the attack occurred.  He alleged that the Zingales video would show he and D.T.

drank there for many hours, but that fact was not in dispute and was related
to the jury in both his and D.T.'s testimony.

The Eleventh Circuit has reiterated that a post-conviction claim that is
conclusory and speculative is insufficient to warrant federal habeas relief.
McFadden v. Sec'y, Dep't of Corr., No. 17-10384-F, 2017 WL 7065743, at
*4 (11th Cir. Sept. 6, 2017) (citing Tejada v. Dugger, 941 F.2d 1551, 1559
(11th Cir. 1991) (stating that a movant is not entitled to habeas relief when
his claims are merely "conclusory allegations unsupported by specifics or
contentions that in the face of the record are wholly incredible")).
Moreover, Petitioner must show more than an incorrect determination of
Strickland, he must show that the state court applied Strickland to the facts
of the case "in an objectively unreasonable manner."  Webster v. Sec'y,
Dep't of Corr., 291 F. App'x 964, 966-67 (11th Cir. 2008) (unpublished)
(quoting Bell v. Cone, 535 U.S. 685, 699 (2002)).  The standards created
by Strickland and § 2254 are "highly deferential," thus the range of
reasonable applications is substantial.  Richter, 562 U.S. at 105.  Based on
the trial testimony, the lack of specificity of his post-conviction allegations in
State court, and the deference to be accorded to the state court's
adjudication, Petitioner has failed to show that the state court's adjudication

was objectively unreasonable.  Habeas relief on Ground 1 should be denied.

## **Ground 2: Prosecutorial Comment**

In his second ground, Petitioner contends that trial counsel rendered ineffective assistance for failing to seek a mistrial based on an improper comment by the prosecutor concerning Petitioner's right to remain silent. ECF No. 1 at 11.  The comment complained of by Petitioner was in the form of a question posed by the prosecutor after Petitioner testified that he fought with three men at the bar and was knocked out and, when he awoke, the car and D.T. were gone.  During cross-examination of Petitioner by the prosecutor, the following questions and answers transpired:

> Q.  [Mr. Mutz, the prosecutor]: You said you went unconscious for a while.
>
> A.  Yes, sir.
>
> Q.  Did you go to the hospital?
>
> A.  I did not go to the hospital.
>
> Q.  But you could have had a concussion.  You didn't get it checked?
>
> A.  No.  I already had enough medical bills. I don't need another four-hour visit at the ER.
>
> Q.  So you treated yourself with a couple of cigarettes.
>
> A.  The initial night, yes.  When I got home, I took some pain killers.
>
> Q.  And you didn't make a police report either about somebody knocking you unconscious and leaving you practically for dead on the side of the road?

A.  No, I didn't because in September, prior to that, I fell off my bicycle riding down the road drunk.  What am I going to do?  Make a report on myself?

Q.  Well, I'm - -

A.  So I didn't - -

Q.  We're talking - -

A.  - - know if I fell down.  Like I said, I was pretty, I was pretty intoxicated.

Q.  Let me stop you right there, sire.  We're not talking about an accident.  We're talking about you said somebody hits you from behind, hits you in the back of the head until you were unconscious and left you there.

A.  I said someone or something.  Yes.

Q.  But you didn't call the police.

A.  I didn't have no way.  I didn't have enough money to use a pay phone.

Q.  Now we're talking about something that happened December 2011, right?

A.  Yes.

Q.  **But this is the first time we're hearing about** - -

MR. SHIPPY [defense counsel]: Your honor, I object.  Can we step to sidebar?

THE COURT:  Yes.

(Sidebar discussion held as follows):

MR. MUTZ:  This is the first time we're hearing about the story when before - -

THE COURT:  It's a mistrial.  You're going to pull a mistrial on that.

MR. SHIPPY:  If you ask that question, that's ridiculous.  It's not been - -

THE COURT:  It is a mistrial.

MR. MUTZ:  When he's told the police that she was in the car and crashed with him?

MR. SHIPPY:  He hasn't told the police anything yet.  So --

THE COURT:  What statement did he give the police?  There's no evidence of that.  What statement did he give the police?

MR. MUTZ:  I, I can call a rebuttal witness for that.

THE COURT:  I don't think you can ask it.

MR. SHIPPY:  I'm going to object on discovery grounds.

MR. MUTZ:  It's in the police report where he called and left a message that - -

MR. SHIPPY:  That's hearsay what you have at this point in time.  You have no witnesses under subpoena that are going to be able to come to court to testify that he called.  That's speculation.  Nobody's ever been able to connect that particular call to Mr. Pate.

MR. MUTZ:  Fine, I'll move on.

MR. SHIPPY:  I mean, we're right at the end of trial here.

THE COURT:  We'll probably get a mistrial on a heartbeat.

MR. SHIPPY:  Yeah.

THE COURT:  Commenting on his right to remain silent, unless you've proved that he's made - - there's no evidence that he's made a statement to anybody at this point in the trial.  So if you ask that question when there's no evidence supporting a prior inconsistent statement, then it's commenting on his right to remain silent since arrest.

MR. MUTZ:  Well, I - - just for the record, I believed I had a good faith basis to ask it based on what Scott Cherry had in his report. So - - I will withdraw the question and move on.

Ex. B4 at 247-50 (emphasis added).

Petitioner contended in his second post-conviction ground in state

court that his trial counsel should have moved for a mistrial and a curative

instruction, and that failure to advise him that he had a right to ask for a mistrial deprived Petitioner of a significant procedural right.  Ex. C1 at 11-12.  He further alleged that the significant procedural right he was deprived of was the right to raise the issue on appeal, and that this satisfied the prejudice prong of Strickland.  *Id.* at 12.  The postconviction court denied the claim, concluding that because counsel objected and the objection was sustained before the complete question was asked, and because the prosecutor quickly moved on to another question, there was no need for a curative instruction and no basis to move for a mistrial.  Ex. C1 at 30-31.  The state appellate court affirmed denial of post-conviction relief.

"In Doyle v. Ohio, 426 U.S. 610, 619 (1976), the Supreme Court held that 'the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment.' " Hill v. Turpin, 135 F.3d 1411, 1413-14 (11th Cir. 1998) (quoting Doyle, 436 U.S. at 619).  The Court has reiterated that the Doyle rule "rests on 'the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial.' " Wainwright v. Greenfield, 474 U.S. 284, 291 (1986) (quoting South Dakota v. Neville, 459 U.S. 553, 565, (1983)).

*See also* Brecht v. Abrahamson, 507 U.S. 619, 628 (1993); Greer v. Miller,

483 U.S. 756, 763 (1987); Hill, 135 F.3d at 1413.

Success on a claim of prosecutorial misconduct in attempting to ask

an improper question requires a showing that the conduct so infected the

trial with unfairness as to make the resulting conviction a denial of due

process.  Greer v. Miller, 483 U.S. 756, 765 (1987) (quoting Donnelly v.

DeChristoforo, 416 U.S. 637, 643 (1974)).  It is important "as an initial

matter to place th[e] remar[k] in context."  *Id.* at 766 (citing Darden v.

Wainwright, 477 U.S. 168, 179 (1986)).  The court must determine

"whether, considered in the context of the entire trial, that conduct appears

likely to have affected the jury's discharge of its duty to judge the evidence

fairly."  United States v. Simtob, 901 F.2d 799, 806 (9th Cir. 1990).  "Such a

determination depends on whether there is a reasonable probability that, in

the absence of the improper remarks, the outcome of the trial would have

been different."  Williams v. Weldon, 826 F.2d 1018, 1023 (11th Cir. 1988).

The appropriate standard of review for a claim of prosecutorial

misconduct on a writ of habeas corpus is "the narrow one of due process,

and not the broad exercise of supervisory power."  Darden, 477 U.S. at 181

(quoting Donnelly, 416 U.S. at 642).  In other words, the conduct must be

so egregious as to render the entire trial fundamentally unfair.  Donnelly,

416 U.S. at 642-45. The Supreme Court has stated that "the touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982). Thus, the federal habeas court must determine whether the prosecutor's actions were so egregious that his misconduct amounted to a denial of constitutional due process. *Id.*

In this case, Petitioner contends that his trial counsel rendered ineffective assistance in not asking for a mistrial, but has not identified any authority that would indicate a reasonable probability under either federal or state law—sufficient to undermine confidence in the outcome—that a motion for mistrial would have been granted or that, on appeal, he would have been granted a new trial based on denial of a motion for mistrial.[4]

---

[4] Petitioner's argument that counsel was ineffective for failing to preserve a mistrial issue for appeal has been described as having a "fundamental flaw" because it focuses on the outcome of the appeal, not the trial. Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006). "The Supreme Court in Strickland told us that when the claimed error of counsel occurred at the guilt stage of a trial (instead of on appeal) we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal." Purvis, 451 F.3d at 739. *See also* Brown v. U.S., 533 F. App'x 881, 883 (11th Cir. 2010) (unpublished) ("[W]e have rejected the argument that the inquiry into prejudice is whether the appellate panel would have arrived at a different conclusion on direct appeal. Instead, we've held that the relevant inquiry is whether the objection would have caused the factfinder to have a reasonable doubt about the defendant's guilt. This holding was due in part to Strickland's requirement that courts determine prejudice based on the outcome of the trial, not the outcome on appeal, when the claimed error occurred at the guilt stage of a trial.") (citation omitted)).

Under Florida law, a mistrial will be granted only when the error is so prejudicial as to vitiate the entire trial. *See* Salazar v. State, 991 So. 2d 364, 372 (Fla. 2008). The prosecutor began his question, but an objection was lodged before he could complete it. He stated only, "But this is the first time we're hearing about - - " The trial judge *sua sponte* noted that if the question had been finished it might have been grounds for a mistrial, thus indicating that the court was already considering the possibility of a mistrial even without a motion. The judge's comments also made clear that a mistrial would not have been granted based only on that unfinished question, even if a mistrial had been requested. Petitioner has not shown that the error of the prosecutor in attempting to pose the question was so prejudicial that it vitiated the entire trial.

A curative instruction was also not sought, but Petitioner failed to allege any facts or law to support a conclusion that but for the failure to request such an instruction, the outcome of the proceeding would be different. The incomplete question was isolated and was not made a feature of the trial. The jury was instructed at the beginning of trial that if an objection is posed and upheld, the jury is not to speculate on what might have occurred had the objection not been upheld or what the witness might have answered had he been permitted. Ex. B3 at 35. *See, e.g.,* U.S. v.

Miller, 255 F.3d 1282, 1286 (11th Cir. 2001) (finding no reversible error in prosecutor's brief, unanswered questions about post-arrest silence in part because, although "a curative instruction was neither requested nor given, the court instructed the jury at the start of the trial not to consider counsel's questions as evidence and that, if an objection was sustained and no answer was given, not to consider counsel's question as evidence."). Moreover, if such a curative instruction had been sought and given in Petitioner's trial, it could have highlighted the significance of the incomplete, unanswered question asked by the prosecutor.  *See* Littler v. Sec'y, Dep't of Corr., No. 8:15cv1447-T-36TBM, 2018 WL 3105250, at *6 (M.D. Fla. June 25, 2018).[5]

---

[5] The court in Littler explained:

> Requesting a curative instruction may have highlighted a stray, vague, and relatively innocuous comment (*see* Respondent's Ex. 2, p. 236).  *See* Chaffin v. Stynchcombe, 412 U.S. 17, 41 (1973) (Marshall, J., dissenting) (recognizing that "curative instructions may serve only to highlight the problem").  Counsel could have reasonably decided not to request a curative instruction where, to do so, only would serve to highlight the comment.  *See, e.g.*, Werts v. Vaughn, 228 F.3d 178, 205 (3d Cir. 2000) (strategy of not objecting or seeking curative instruction was not unreasonable in light of concern "with further highlighting these statements" and "[c]ounsel's decision not to draw attention to the remarks cannot be deemed unreasonable trial strategy"), *cert. denied*, 532 U.S. 980 (2001).

Littler, 2018 WL 3105250 at *6.  *See also* Shabazz v. State, 928 So. 2d 1267, 1269 (Fla. 4th DCA 2006) (noting that a curative instruction would have highlighted the error); Taylor v. State, 640 So. 2d 1127, 1132 (Fla. 1st DCA 1994) (noting that a curative instruction can focus attention on the improper remark).

In light of the other evidence in the case, including D.T.'s direct account of the attack and the evidence presented that corroborated her testimony, and because the question was not completed and no evidence violating Petitioner's right to remain silent was put before the jury, Petitioner has failed to show that the question was so prejudicial as to vitiate the entire trial or constitute a denial of due process, thus justifying a mistrial or requiring a curative instruction. No reasonable probability has been shown that but for the alleged error of counsel in failing to move for a mistrial or a curative instruction, a different result would have obtained.

For the foregoing reasons, the state court's adjudication of Petitioner's ineffective assistance of counsel claim has not been shown to involve an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts in light of the evidence presented. This ground should be denied.

## **Conclusion**

Based on the foregoing, Petitioner Joshua L. Pate is not entitled to federal habeas relief. Accordingly, the § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is

filed, the court may certify appeal is not in good faith or party is not

otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the

§ 2254 petition (ECF No.1).  It is further **RECOMMENDED** that a certificate

of appealability be **DENIED** and that leave to appeal in forma pauperis be

**DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on January 7, 2019.


**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


### NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  See 11th Cir. R. 3-1; 28 U.S.C. § 636.**